IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

07-14254

ALAN K. RICHARDS
  PLAINTIFF

    vs.

PROFESSOR AYUSMAN SEN
PENNSYLVANIA STATE UNIVERSITY
PENN STATE RESEARCH FOUNDATION
  and
MARK RIGHTER, ESQ.
PAMELA RUEST, ESQ.
LIVINIA JONES, ESQ.
MCQUAIDE, BLASKO, FLEMING
    & FAULKNER, INC.
  DEFENDANTS

CIV-MOORE

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

FILED BY _____
2007 AUG 21 PM 2:28

## COMPLAINT

COMES NOW Plaintiff Alan K. Richards, and for his Complaint against Defendants, states to this Honorable Court as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

### A. PARTIES, JURISDICTION AND VENUE

1. Plaintiff Alan K. Richards is a chemist, and is the lawful and proper inventor of various U.S. and foreign patent applications, including US application 10/873,361, which describes a new and useful process for efficiently converting methane, which normally is a gas, into liquids that can be transported efficiently to distant markets, by tanker or pipeline.

2. At all relevant times, Defendant Ayusman Sen has been a chemistry professor at Defendant Pennsylvania State University (Penn State). It is believed that all or most of Prof.

Sen's actions described herein were done with the knowledge of, at the behest of, and for the benefit of that university, and for an affiliated entity, The Penn State Research Foundation (also a Defendant), which handles patent ownership and management in behalf of the university and its professors.

3. At all relevant times herein, Defendants Mark Righter, Pamela Ruest, and Livinia Jones, all attorneys, are believed to have been employed at Defendant law firm McQuaide, Blasko, Fleming & Faulkner, Inc., which provided patent counsel to Defendants Ayusman Sen, Penn State University, and Penn State Research Foundation. While Plaintiff recognizes and understands the high requirements that must be met in order to sue an attorney and/or law firm for advice and counsel that the attorney and/or law firm provided to a client, the actions of the above-named attorneys and law firm in this case have risen to a level that is fairly and properly described as a criminal conspiracy, designed to defraud not just the Plaintiff, but the public, the federal government, and the United States Patent and Trademark Office. Furthermore, the nature of the decisions that were made by Defendant Sen, with counsel from the above-listed Defendant attorneys, might enable Defendant Sen to attempt to avoid responsibility merely by claiming that did what he was advised to do by those attorneys. Accordingly, Plaintiff is entitled to compel each of the defendant attorneys to state, under oath, why they knowingly and deliberately advised Defendant Sen to act in a way that directly violated both civil and criminal laws of the United States..

4. The matter in controversy involves U.S. patents, and is subject to the exclusive jurisdiction of the federal Courts.

5. Venue is proper in this Court pursuant to 28 USC 1391(b), since a substantial part of property that is the subject of this action is situated in this judicial district.

### B. FACTS

6. In about January or February 2003, Plaintiff Alan Richards conceived of a new chemical process for converting methane gas into liquids that can be transported efficiently to distant markets by tanker or pipeline. Since methane (as a byproduct of crude oil production) cannot be transported efficiently to locations where it is needed as a fuel, it is being wasted in huge quantities (estimated to be worth $100 million every single day, around the world) at "remote" or "stranded" oil fields around the world. The Plaintiff's new discovery of an improved chemical method was described in a U.S. provisional patent application, serial number 60/480,183, filed on June 21, 2003. As allowed by US patent law, that *provisional* patent application was superseded by a *utility* patent application, serial number 10/873,361, filed one year later, on June 21, 2004. The utility application has been fully examined and has been allowed, by the U.S. Patent and Trademark Office (hereafter, the Patent Office).

7. In late May or early June of 2003, Plaintiff Richards contacted Defendant Ayusman Sen, a chemistry professor with a history of research and publications involving methane-to-liquid conversion. Plaintiff Richards informed Defendant Sen that he (Richards) had discovered what appeared to be a completely new process for methane conversion, and had already obtained a sophisticated computer model of the new process, which showed that the process was extremely promising and efficient. Plaintiff Richards asked whether Defendant Sen would be willing to carry out confirmatory research in Sen's chemistry laboratories at Penn State University.

8. Defendant Sen responded by asking about the chemical process. Richards told Sen that the information could not be disclosed unless a written non-disclosure and non-use agreement was created and signed. Sen agreed to sign such an agreement personally, so that he could make a preliminary evaluation of the process, to determine whether he (Sen) was willing to become involved in doing and/or supervising the research. Both men understood that if Sen remained interested after his initial evaluation, a more detailed agreement with Sen's employer, Penn State University, would be required before the research could be funded by Richards and performed by Sen.

9. Defendant Sen personally signed a contract of non-disclosure and non-use, on June 5, 2003. Sen signed it specifically in order to obtain confidential information from Richards, on the methane conversion process that had been created and modeled by Richards.

10. After receiving the signed non-disclosure and non-use agreement, Plaintiff Richards provided extensive information on the chemical process to Defendant Sen, including the results of the computer modeling. For example, page 21 of a draft report by Richards specifically provides calculated enthalpy and "Gibbs free energy" values for each of several sequential steps in a chain reaction that uses a "radical initiator" compound called Marshall's acid (which has the chemical formula $H_2S_2O_8$) to initiate a chain reaction that will cause methane gas ($CH_4$) to combine with sulfur trioxide ($SO_3$), in a specific and controlled way that forms a liquid called methanesulfonic acid (MSA, which has the formula $CH_3SO_3H$). The computer-modeled thermodynamic values were set forth in a table in the report by Richards, and were followed immediately by the following sentence, *written by Plaintiff Richards and sent to Defendant Sen*: **"Based on these thermodynamic data we can estimate that one of the best initiators will be Marshall's acid, $H_2S_2O_8$,** while Caro's acid, $H_2SO_5$, and hydrogen peroxide will be less active initiators." (emphasis added). That sentence, that confidential disclosure, and that chemical method sits at the very heart of an invention that Defendant Ayusman Sen subsequently claimed to have invented, with no coinventorship whatever by Alan Richards.

11. Within a week after receiving the information from Plaintiff Richards, Defendant Sen reviewed it, agreed that it was promising, and stated that he (Sen) wanted to do the confirmatory work in his laboratories at Penn State. This was stated in writing, by Sen, in an e-mail dated June 16, 2003. In the subject header of his e-mail, **Defendant Sen called the chemical pathway the "*Richards system*"**. The header of **that same email, written by Defendant Sen, says,** "Thoughts and Comments on *The Richards System*". The text of **that same e-mail, written by Defendant Sen, states, "I finally had time to think about** *your very interesting system . . .* **I look forward to** *the opportunity to test out some [of] your ideas.*"

Accordingly, **Defendant Sen -- in his own words -- explicitly, directly, and repeatedly called the new chemical pathway,** *The Richards System.*

12. The following day, on June 17, 2003, Plaintiff Richards contacted Robert Baker, an official in the Office of Sponsored Programs, at Penn State. They negotiated a research contract, which was signed the next month, in July 2003. Subsequently, GTL Technologies, Inc. (a company formed and entirely owned by Alan Richards) paid nearly $50,000 in cash to Penn State, to fund the confirmatory research done in Prof. Sen's laboratory. Those steps were done with Defendant Sen's approval and assistance.

13. Roughly five months later, after certain laboratory work had been partially completed, Sen sent a progress report to Richards, by e-mail dated November 11, 2003. Sen's progress report contained **the following statements, written by Sen in his own words:**

> "Dear Alan: I wanted to update you on the experiments pertaining to methane to methanol conversion that we have carried out in our laboratory. *As you know, these experiments are based on theoretical calculations carried out by you and your colleagues . . .*" (emphasis added)

14. In about February 2004, acting through his attorney, Richards offered Sen an ownership stake in a company that would own the patents. The offer started at 1% with an option to increase later to 5%, based on subsequent contributions.

Prof. Sen was not happy with that offer, and instead demanded a 10% stake, up front, to keep working on the project. Richards declined, and on March 17, 2004, Sen wrote an e-mail to Richards, saying, *"I should have no further role in the project* beyond the subcontract which ends next month. *The project is something you started and you can take credit accordingly - I will be happy to get a publication out of it."* (emphasis added)

15. One month later, on April 20, 2004, without disclosing his actions to Richards, Sen and his attorneys secretly submitted a provisional patent application, serial number 60/563,717, believed by Plaintiff Richards to have been written, approved, and officially filed at the Patent

Office by a collaborative effort involving Defendant attorneys Mark Righter, Pamela Ruest, and/or Livinia Jones. ***In that application, Sen and/or his attorney(s) claimed that Sen and his research assistant (Minren Lin) had created the invention on their own. They did not include Alan Richards as a coinventor.*** Their decision to exclude Richards as a coinventor was an act of both civil and criminal fraud.

16. To the best of the Plaintiffs' knowledge and belief, Minren Lin was coerced into going along with Sen's application, despite Lin's strong reservations. Lin subsequently told Plaintiff Richards what had been done, and provided a copy of the provisional patent application to Richards, in the hope that something could be done to solve the problem. Accordingly, Minren Lin is now designated as a codefendant in this Complaint. However, the Plaintiff reserves the right to amend this complaint and add Lin as a codefendant, if facts and statements discovered in the future indicate that Lin was an active and willing participant in the fraudulent actions by Defendants Ayusman Sen and his attorneys.

17. The copy of Sen's provisional patent application that was provided to the Plaintiff states the following, on page 2 of the text:

> "In late August 2003, the present inventors began to examine in detail the $H_2S_2O_8$-initiated reaction between methane and sulfur trioxide to form methanesulfonic acid (MSA), as part of a research agreement between GTL Technologies Inc. (GTL) and The Pennsylvania State University (PSU). ***Theoretical modeling at GTL indicated that $H_2S_2O_8$ should initiate the reaction under mild conditions.*** GTL did not provide the inventors with any specific experimental protocols, and the selectivity and yield of the reaction could not be provided in advance of the experiments. The present inventors conceived, developed and optimized the experimental procedure (documents in laboratory notebooks). The most significant discovery was the combination of high conversion and selectivity . . ." (emphasis added).

In other words, Sen's own provisional patent application clearly and directly stated and confirmed certain crucially important facts which clearly and undeniably require that Richards should have been listed as at least a coinventor, in any patent application filed by or in behalf of Defendant Sen. The words in Defendant Sen's own patent application explicitly confirm that

6

Plaintiff Richards had told Sen about the crucial process; Plaintiff Richards specifically and explicitly told Sen that Marshall's acid ($H_2S_2O_8$) could and would trigger a chain reaction, between methane and sulfur trioxide, which would form methanesulfonic acid (MSA). The unequivocal statements in Defendant Sen's own patent application explicitly and undeniably confirm and prove that Plaintiff Richards was the one who had obtained the computer modeling, which had calculated the thermodynamics of the exact same reaction which Sen then claimed was his discovery. Based on those facts, which are directly and undeniably confirmed by the words of Sen's own patent application, there is no way that Sen or his attorneys could truthfully claim that Richards was not *at least a coinventor*.

18. After Sen and his attorneys had months of additional time, to ponder the legal implications of the admissions they had foolishly written into Sen's provisional application, they realized that they could not include those admissions in a *utility* patent application (unlike provisional applications, utility applications are published, and are open to inspection by the public), without disclosing a huge problem which they wished to keep hidden. Therefore, they altered the passage that is quoted verbatim above, in a manner deliberately designed to fraudulently conceal Richards' crucial contributions (and his essential role as the true discoverer and inventor of the process) from the Patent Office. In specific, where the provisional application had stated, "*Theoretical modeling **at GTL** indicated that $H_2S_2O_8$ should initiate the reaction under mild conditions*", the utility application was altered to state, "*Theoretical modeling indicates that $H_2S_2O_8$ should initiate the reaction under mild conditions*" (column 2, line 8-10).

On April 13, 2005, as the anniversary of Sen's provisional application was approaching, Sen and his attorneys Pamela Ruest and/or Livinia Jones filed utility patent application, serial number 11/105,245, which issued on October 10, 2006, as US patent 7,119,226. As indicated above, that utility patent application deliberately and fraudulently concealed any disclosure of Alan Richard's contributions. Furthermore, Prof. Sen signed a sworn oath, stating under penalty of perjury that he and his assistant Minren Lin were the only two coinventors of the invention.

19. Through his attorney, Richards protested the actions of Sen, and specifically cautioned Prof. Sen, several officials at Penn State (including Robert Killoren and Robert Baker), and Defendants Mark Righter and the McQuaide Blasko et al law firm, that they were acting illegally and in direct violation of the laws that govern patent inventorship. Those warnings were given prior to issuance of US patent 7,119,226, while there was still time for Defendants to correct the problems of fraud they had created.

20. During licensing contacts and negotiations between Alan Richards and certain major chemical and/or petroleum companies, Richards was explicitly told that the companies were not willing to license Richards' patent application, until the "cloud" that had been created by Defendants Sen and Penn State University had been removed or resolved.

21. Because of the financial importance of the new technology, and because of the size of the investments that will be required to commercialize it in large industrial operations , the questions and doubts created by the fraudulent actions of the Defendants have prevented the Plaintiff from licensing his invention, and have severely damaged the Plaintiff's financial, reputation, and other interests.

## COUNT 1:
### FRAUD, THEFT, AND CRIMINAL CONVERSION

22. All statements of fact as set forth above are incorporated into this count, by reference.

23. By their collective and concerted actions, the Defendants acting together have violated the requirement that the true inventor(s) of an invention must be identified in any patent application. That requirement is set forth in various sections of the U.S. patent law (Title 35 of the US Code), such as sections 101, 111, 115, and 116. Defendant Sen cannot claim truthfully that Alan Richards does not qualify as at least a coinventor of what Sen himself called "*the*

*Richards process*". And yet, Professor Sen -- apparently at the urgings of the Defendant attorneys and of officials at Penn State University, who were warned in advance against such actions -- signed a sworn oath, under penalty of perjury, claiming that he and his assistant -- but not Alan Richards -- were the sole inventors of what they claimed to be their invention. By violating the US patent law, each and all of the Defendants have committed a fraud on the government, a act of theft, and an act of criminal conversion (all of which are criminal acts), and also have committed various civil violations and infractions against the Plaintiff.

24. Therefore, Plaintiff prays and requests that this Court issue a judgment declaring US Patent 7,119,226 to be fraudulently obtained and therefore invalid.

25. Plaintiff further prays and requests that this Court issue a judgment awarding the Plaintiffs both: (i) fair and reasonable compensation for the actual damages suffered by Plaintiff as a result of the fraud, theft, and criminal conversion by the Defendants; and, (ii) appropriate punitive and/or exemplary damages, to deter the Defendants and others in similar situations from committing or attempting to commit similar criminal or other illegal acts in the future.

## COUNT 2:
## BREACH OF CONTRACT

26. All statements of fact as set forth above are incorporated into this count, by reference.

27. By filing, prosecuting, and publishing a patent application that attempted to steal Plaintiff Richards' invention, Defendant Ayusman Sen violated the terms and requirements of a non-disclosure and non-use agreement, which he signed with GTL Technologies (the company formed and owned by Alan Richards) on June 5, 2003.

28. Plaintiff hereby prays and requests that this Court issue a judgment against Defendant Ayusman Sen, awarding the Plaintiff both: (i) fair and reasonable compensation for the damages

he has suffered as a result of the breach of contract by Defendant Sen; and, (ii) reasonable and appropriate punitive and/or exemplary damages, to deter Defendant Sen from attempting to commit similar acts in the future.

## COUNT 3:
## FRAUD, THEFT, CRIMINAL CONVERSION, CRIMINAL CONSPIRACY, CORRUPT PRACTICES, AND MALPRACTICE BY ATTORNEYS

29. All statements of fact as set forth above are incorporated into this count, by reference.

30. Although discovery will be required in order to determine the specific actions by each of defendant attorneys Mark Righter, Pamela Ruest, and Livinia Jones, it is believed and the available facts clearly indicate that all three attorneys, working together, engaged in a conspiracy and in concerted actions to knowingly and intentionally defraud the Plaintiff, the public, and the federal government.

31. Therefore, Plaintiff prays and requests that this Court issue a judgment which: (i) prohibits any of defendant attorneys Mark Righter, Pamela Ruest, or Livinia Jones, from practicing in the future before the U.S. Patent and Trademark Office; and, (ii) sets forth this Court's opinion on whether each named Defendant attorney committed criminal acts and/or malpractice, including but not limited to acts of criminal conspiracy, corrupt practices, and violations of any code(s) of professional conduct that apply to attorneys who practice law in Pennsylvania, for consideration by authorities who work in the state of Pennsylvania, both in law enforcement and for the Pennsylvania Bar Association, and who work for the federal government.

32. In addition, Plaintiff prays and requests that this Court grant an award against each of the Defendant attorneys individually, and against their law firm as well, awarding the Plaintiff both: (i) fair and reasonable compensation for the damages he has suffered as a result of their

fraud, conspiracy, and other illegal activities; and, (ii) reasonable and appropriate punitive and/or exemplary damages, to deter the Defendant attorneys from committing or attempting to commit similar wrongful acts in the future.

Respectfully submitted,

Alan K. Richards
   Plaintiff *pro se*
994 Lighthouse Drive
Palm City, FL 34990

phone: 772-708-5917

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**I. (a) PLAINTIFFS** Alan K. Richards

**DEFENDANTS** Ayusman Sen, Penn State University, Penn State Research Foundation, Mark Righter, Pamela Quest, Livina Jones

(b) County of Residence of First Listed Plaintiff: Martin
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Center
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
994 Lighthouse Dr
Palm City, FL 34990

Attorneys (If Known): McQuaide, Blasko et al.

FILED by 2007 AUG 21

(d) Check County Where Action Arose: ☐ MIAMI-DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☒ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE ☐ HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

07CV14254 MKM/FJL

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury - Product Liability | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Re-filed- (see VI below) ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):
a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO
JUDGE                                DOCKET NUMBER

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): Patent Dispute
35 USC 101
35 USC 111
Patent Dispute    LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)    35 USC 115-116

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD    DATE 8/21/2007

FOR OFFICE USE ONLY
AMOUNT    RECEIPT #    IFP