IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 07-14254-CIV-MOORE/LYNCH

ALAN K. RICHARDS,

    Plaintiff,

vs.

AYUSMAN SEN, et al.,

    Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss Second Amended Complaint (dkt # 49).

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. BACKGROUND

This case involves multiple claims against Defendants for injuries arising from the allegedly unlawful use of proprietary information.[1]  In 2003, Plaintiff Alan K. Richards ("Richards") conceived of a chemical process for converting methane gas into liquid.  Richards anticipated that this conversion process would facilitate the transport of methane by increasing the efficiency of transport by tanker or pipeline.  Richards sought patent protection for the process on June 21, 2004, and was granted U.S. Patent No. 7,282,603 (the "Richards 603 Patent") on October 16, 2007.  Second Am. Compl., Ex. 1.  Richards next obtained the services of a computer modeling specialist to

---

[1] The facts here are taken from the Second Amended Complaint (dkt # 45) unless otherwise indicated.

create a computer simulation of the process. The computer simulation substantiated that the process of converting methane gas to liquid would occur as predicted.

In June of 2003, Defendant GTL Technologies, Inc. ("GTL"), a Delaware corporation owned by Richards and based in Houston, Texas, entered into a "Confidentiality, Disclosure and Non-Use Agreement" (the "Confidentiality Agreement") with Defendant Ayusman Sen ("Sen"). Second Am. Compl., Ex. 4 (dkt # 46). The Confidentiality Agreement described GTL as the owner of certain confidential information that would be provided to Sen, and required that Sen keep confidential any information covered by the Confidentiality Agreement. Confidentiality Agreement, Introductory Paragraph and § 2.1. Richards subsequently disclosed to Sen technical information concerning the methane conversion process so that Sen could decide whether he and Penn State University ("Penn State") would agree to carry out a set of laboratory tests concerning the methane conversion process in the Chemistry Department at Penn State. After reviewing the information, Sen agreed to conduct laboratory research to test the conversion process.

Once Sen agreed to test the process, Richards and Penn State entered into an "Agreement Between [GTL] and [Penn State] For Work Related to the Small Business Technology Transfer ("STTR") Program" (the "STTR Agreement"). Second Am. Compl., Ex. 10. The STTR Agreement governed the rights of the parties concerning the STTR project to be carried out by GTL and Penn State under a funding agreement that might be awarded by the United States Department of Energy ("DOE") to GTL to fund a grant application entitled "Exothermic Conversion of Methane into Methanol or Other Oxygenated Derivatives." STTR Agreement, Introductory Paragraph. GTL was ultimately awarded a DOE grant (DOE grant number DE-FG02-03ER86160). Id., Property and Commercialization Rights Agreement Certification. Plaintiffs allege that GTL and DOE later agreed

to terminate the grant, under which no funds were distributed, because "Defendants made it impossible for [GTL] to satisfy certain reporting and other requirements with the DOE," thereby causing GTL to forfeit more than $99,000. Second Am. Compl., ¶¶ 36-37. In August of 2004, GTL notified Penn State that it was terminating the STTR Agreement.

On April 13, 2005, Defendants filed a patent application, which issued on October 10, 2006, as U.S. patent No. 7,119,226 (the "Sen 226 Patent"), and is titled "Process for the Conversion of Methane."[2] Second Am. Compl., Ex. 14. On October 21, 2008, Plaintiffs filed the original Complaint in this action.[3] A Second Amended Complaint (dkt # 45) was filed on October 3, 2008, and included claims for (1) defamation, slander of title and injurious falsehood; (2) tortious interference with prospective economic advantage; (3) unfair competition; (4) antitrust violations; (5) breach of contract; (6) a declaratory judgment action seeking to invalidate the Sen 226 Patent; and (7) a declaratory judgment action concerning the rights and obligations of the Parties with respect to the Richards 603 Patent. In March of 2008, the United States Patent and Trademark Office ("PTO") granted Plaintiffs' ex parte request for reexamination of claims 1-4 of the Sen 226 Patent. Second Am. Compl., Ex. 13. The PTO's reexamination proceeding is currently pending.

## II. ANALYSIS

### A. Personal Jurisdiction

Defendants contend that this Court lacks personal jurisdiction over each of the nonresident Defendants. When considering a motion to dismiss for lack of personal jurisdiction, a court must

---

[2] The Sen Patent lists Ayusman Sen and Minren Lin as Inventors and The Penn State Research Foundation as Assignee.

[3] None of the Defendants in this action are residents of Florida, incorporated in Florida, or headquartered in Florida.

3

accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits. *See* Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988); Corneal v. CF Hosting, Inc., 187 F. Supp.2d 1372, 1373 (S.D.Fla. 2001); Venetian Salami Co. v. J.S. Parthenais, 554 So.2d 499, 502 (Fla. 1989). Once the plaintiff pleads sufficient material facts to form a basis for personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by affidavits or other pleadings. *See* Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000); Venetian Salami Co., 554 So.2d at 502. When the nonresident defendant meets this burden, the plaintiff must substantiate the jurisdictional allegations in its complaint by affidavits or other competent proof, and may not merely rely upon the factual allegations set forth in the complaint. *See* Future Tech. Today, Inc., 218 F.3d at 1249; Venetian Salami Co., 554 So.2d at 502.

A determination of whether personal jurisdiction over a nonresident defendant exists requires a two-part analysis. D.W. Mercer, Inc. v. Valley Fresh Produce, Inc., 146 F. Supp.2d 1274, 1276 (M.D.Fla. 2001). First, the Court must consider the jurisdictional question under the Florida state long-arm statute. *See id.*; *see also* Fla. Stat. § 48.193(1). If there is a basis for the assertion of personal jurisdiction under the state statute, the Court will next determine "whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." D.W. Mercer, Inc., 146 F. Supp.2d at 1276 (citing Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996)). Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant. *See* Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996). "Because the reach of the Florida long-arm statute is a question

of Florida state law, federal courts are required to construe it as would the Florida Supreme Court." Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 890-91 (citing Moore v. Lindsey, 662 F.2d 354, 357-58 (5th Cir. 1981); Jetco Elec. Industries, Inc. v. Gardiner, 473 F.2d 1228, 1232 (5th Cir. 1973)). Furthermore, the Florida long-arm statute is to be strictly construed. Id.

1. Florida's Long-Arm Statute

Florida's long-arm statute authorizes courts to exercise specific jurisdiction under § 48.193(1), Florida Statutes, and general jurisdiction under § 48.193(2), Florida Statutes. Florida's long-arm statute states, in relevant part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: . . .
> (b) Committing a tortious act within this state . . . .
> (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

§ 48.193(1)(b), (1)(g) and (2), Fla. Stat.

"A court may exercise specific jurisdiction over a nonresident defendant only when the plaintiff's cause of action arises from or is directly related to a defendant's contacts with the forum state." Design-Build Concepts, Inc. v. Jenkins Brick Co., No. 06cv558 (MCR), 2008 WL 868150, at *2 (N.D.Fla. 2008) (citing Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 n.3 (11th Cir. 2000)). Thus, specific jurisdiction requires connexity, or in other words

5

some "direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state." Sun Trust Bank v. Sun Int'l Hotels, Ltd., 184 F. Supp.2d 1246, 1269 (S.D.Fla. 2001) (quoting Citicorp Ins. Brokers (Marine) Ltd. v. J.R. Charman, 635 So.2d 78, 81 (Fla. 1st DCA 1994) (internal quotation marks omitted).

2. Due Process

An exercise of jurisdiction under a state's long-arm statute must also comport with due process. The due process requirement is met when a defendant has established "minimum contacts" with the state seeking to exercise jurisdiction. Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 392 (11th Cir. 1988) (quoting Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)). If minimum contacts have been established, the exercise of personal jurisdiction over a defendant must not offend "traditional notions of fair play and substantial justice." Id.

a. Minimum Contacts

"Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant to have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." Madara v. Hall, 916 F.2d 1510, 1516 (11th Cir. 1990) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "This fair warning requirement is satisfied if the defendant has 'purposefully directed' his activities at the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Id. (internal citation omitted). "Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there." Id. (quoting Burger King, 471 U.S. at 474). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). "Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is not the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum." Madara, 916 F.2d at 1516-17 (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987)).

### b. Fair Play and Substantial Justice

"Once it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum such that he should reasonably anticipate being haled into court there, these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Madara, 916 F.2d at 1517 (quoting Burger King, 471 U.S. at 476). These other factors include "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." Id. (quoting Burger King, 471 U.S. at 476).

### 3. Defamation, Slander of Title, and Injurious Falsehood Claims

#### a. Long-Arm Statute

The Second Amended Complaint states that specific jurisdiction exists because Defendants committed tortious acts within the state. Second Am. Compl., ¶ 2; *see* § 48.193(1)(b). Florida's long-arm statute enables the exercise of personal jurisdiction over a defendant for defamation, slander and libel claims when the injurious information or material is circulated or published to a

third party within the state. See Madara v. Hall, 916 F.2d 1510, 1515 (11th Cir. 1990) (finding that distribution in Florida of a magazine containing libelous statement constituted a tortious act within the state sufficient for exercise of personal jurisdiction under the long-arm statute); Rebozo v. Washington Post Co., 515 F.2d 1208, 1212 (5th Cir. 1975) (same); Hoechst Celanese Corp. v. Nylon Engineering Resins, Inc., 896 F. Supp. 1190, 1193 (M.D.Fla. 1995) (finding that publication of defamatory statements in magazine distributed in Florida was sufficient for exercise of jurisdiction under long-arm statute); Wendt v. Horowitz, 822 So.2d 1252, 1253 (Fla. 2002) (holding that telephonic, electronic or written communication into the state may permit exercise of jurisdiction under the long-arm statute, provided the tort arises from the communication); Renaissance Health Pub. v. Resveratrol Partners, LLC, 982 So.2d 739, 741-42 (Fla. 4th DCA 2008) (finding that defamatory statements made on defendant's interactive website which sells products to Florida was sufficient for exercise of jurisdiction under long-arm statute).

Here, Plaintiffs' defamation, slander of title and injurious falsehood claims appear to be based on Defendants' filing of the patent application leading to the PTO's issuance of the Sen 226 Patent. Plaintiffs contend that the Sen 226 Patent tortiously omitted Richards or GTL as an inventor or assignee and did not include any references to relevant prior art authored by Richards. Plaintiffs assert that these omissions have interfered with potential licensing agreements between Plaintiffs and companies that may be interested in the Richards 603 patent. Assuming, without deciding, that these statements are sufficient to support the alleged causes of action, the PTO's publication of the Sen 226 Patent on the internet is sufficient to permit the exercise of personal jurisdiction under the long-arm statute because publication of the allegedly injurious statements and omissions is an electronic communication accessible to Florida residents. See § 48.193.(1)(b), Fla. Stat.; Wendt, 822 So.2d at

1253.

### b. Due Process

However, these claims fail to comport with due process because Defendants did not have fair warning that filing the patent application, which led to the PTO's subsequent grant of the Sen 226 Patent, would subject them to suit in Florida. Filing a patent application with the PTO does not automatically put the filer on notice that he or she may be hailed into court in any jurisdiction where another party may seek to challenge the validity of the patent. Indeed, a party filing a patent application may have no knowledge of third parties who may wish to challenge a patent's validity. Even assuming that the Sen 226 Patent contains tortious statements or omissions, Defendants did not purposely direct any activity towards Florida by filing the Sen 226 patent application. The tests conducted by Defendants which culminated in the Sen 226 Patent were conducted in Pennsylvania. The parties to the Confidentiality Agreement, under which information indispensable to the acquisition of the Sen 226 Patent is alleged to have been disclosed, were GTL and Sen. GTL is a Delaware corporation based in Texas and Richards was not a party to the agreement. Second Am. Compl., Ex. 4. The Confidentiality Agreement states that GTL is the owner of the confidential information covered by the agreement. Id. The Confidentiality Agreement is governed by the laws of the Commonwealth of Pennsylvania. Second Am. Compl., Ex. 4, § 6.8. Defendants' did not seek out Richards or GTL in Florida to initiate the testing activity. Rather, Plaintiffs' approached Sen in Pennsylvania and solicited his participation in the research. The patent application was not filed in Florida. Moreover, when the Sen 226 Patent was filed on April 13, 2005, which the PTO granted on October 10, 2006, Plaintiffs had not yet obtained the Richards 306 Patent, which the PTO granted on October 16, 2007.

Plaintiffs have provided no support for the proposition that Defendants established minimum contacts with Florida. Although Plaintiffs allege that Defendants had knowledge that Richards resided in Florida as early as March 30, 2004, Richards was not a party to the Confidentiality Agreement, and the Confidentiality Agreement was not negotiated in Florida. Additionally, Defendants never visited Florida for any purpose related to these claims, did not maintain offices in Florida, did not conduct any tests in Florida, did not file the patent application from Florida, and did not have any other connection with the State of Florida in relation to the allegedly tortious acts. Therefore, Plaintiffs' defamation, slander of title and injurious falsehood claims do not comport with due process because Plaintiffs have failed to establish that Defendants had the necessary minimum contacts with Florida. This Court further finds that the factors considered in the traditional notions of fair play and substantial justice analysis do not justify a lesser showing of minimum contacts. See Burger King, 471 U.S. at 477. Accordingly, this Court lacks jurisdiction over Defendants with respect to these claims.

4. Tortious Interference with Prospective Economic Advantage

Defendants' alleged tortious interference with prospective economic advantage must have also occurred within Florida to permit a proper exercise of specific jurisdiction under the long-arm statute. The determinative issue when assessing the Florida long-arm statute's applicability to a tortious interference claim is whether the alleged tort occurred in Florida. Hunt v. Cornerstone Golf, Inc., 949 So.2d 228, 230 (Fla. 4th DCA 2007). Tortious telephonic, electronic or written communications into the state may permit the exercise of jurisdiction under the long-arm statute, provided the tort arises from the communication. Wendt v. Horowitz, 822 So.2d 1252, 1253 (Fla. 2002). Plaintiffs' tortious interference claim appears to be based on the fact that the existence of the

10

Sen 226 Patent is impeding Plaintiffs from establishing licensing agreements under the Richards 603 Patent. However, Plaintiffs have failed to plead any specific instances in which a potential licensing agreement failed to materialize because of the existence of the Sen 226 Patent. Even assuming that the mere existence of the Sen 226 Patent could support a claim for tortious interference of prospective economic advantage, Plaintiffs have not established any act related to the alleged tort that occurred within the State of Florida, nor any communication directed into Florida that constitutes tortious interference. Accordingly, Florida's long-arm statute does not permit an exercise of jurisdiction over Defendants with respect to Plaintiffs' claim for tortious interference with prospective economic advantage.

5. Unfair Competition

Defendants' alleged acts of unfair competition must have occurred within Florida for the long-arm statute to permit this Court to exercise jurisdiction. Plaintiffs' unfair competition claim appears to be based on the Sen 226 Patent's failure to state that Richards or GTL is the inventor or assignee. The elements of unfair competition are "(1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion." Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp.2d 1314, 1324 (M.D.Fla. 2007). Plaintiffs have failed to plead any acts pertaining to the filing or issuance of the Sen 226 Patent that occurred in Florida. See Flick Mortg. Investors, Inc. v. Metropolis Promotion Invs. & Props., 212 Fed. Appx. 775, 776 (11th Cir. 2006) (applying § 48.193(1)(b), Fla. Stat., to unfair competition claim); Lawson Cattle & Equip., Inc. v. Pasture Renovators, 139 Fed. Appx. 140, 142 (11th Cir. 2005) (same). Defendants' knowledge that Richards may have resided in Florida is insufficient to satisfy the requirements of the long-arm statute because such knowledge does not constitute a tortious act that was committed within the

state. Moreover, Richards' location of residence is of limited relevance because the tests conducted by Sen were done in Pennsylvania and Defendants' only entered into agreements with GTL, a Delaware corporation based in Texas. Therefore, this Court lacks personal jurisdiction over Defendants with respect to the unfair competition claim.

6. Antitrust Violations

Plaintiffs' allege that Defendants violated the antitrust provisions of the Sherman Act by fraudulently obtaining the Sen 226 Patent which created an unlawful monopoly. Antitrust violations are generally considered torts, given the detrimental effect these violations have on competition. Williams Elec. Co., Inc. v. Honeywell, Inc., 854 F.2d 389, 394 (11th Cir. 1988). Plaintiffs have failed to plead that any act essential to the success of the tort was committed in Florida. No acts related to filing the Sen 226 Patent occurred in Florida, the tests conducted by Sen concerning the subject matter of the patent were done in Pennsylvania and Defendants' were only parties to agreements with GTL, a Delaware corporation based in Texas. Therefore, the long-arm statute does not apply to the antitrust claim because no acts upon which the claim is based were committed in Florida.

The Sherman Act also contains its own venue and personal jurisdiction provision applicable to corporations. Title 15 U.S.C. § 22 states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district wherefor it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Plaintiff has not pleaded any facts suggesting that any corporate Defendant in this action transacts business in Florida. Accordingly, personal jurisdiction over any corporate Defendant is unavailable

12

pursuant to this section.

### 7. Breach of Contract

Florida's long-arm statute enables the exercise of personal jurisdiction over nonresident defendants with respect to breach of contract claims if the breach occurs in Florida and involves contractual obligations required to be performed in Florida. § 48.193(1)(g), Fla. Stat. Plaintiffs breach of contract claim is based on Defendants' alleged failure to abide by the terms of the STTR Agreement. Specifically, Plaintiffs' assert that Defendants breached the STTR Agreement by publicly disclosing and misappopriating confidential information. However, none of the alleged breaches of the STTR Agreement occurred in Florida, nor did the STTR Agreement require any of its obligations to be performed in Florida. Accordingly, this Court lacks personal jurisdiction over Defendants with respect to the breach of contact claim.

### 8. Declaratory Judgment to Invalidate the Sen 226 Patent

Plaintiffs seek a declaratory judgment that the Sen 226 Patent is invalid. While the Declaratory Judgment Act permits a district court to grant declaratory relief where a substantial controversy exists between parties having adverse legal interests, the Act provides no independent basis of jurisdiction. *See* Harbert v. U.S., 206 Fed. Appx. 903, 908 (11th Cir. 2006). Therefore, a court must have subject matter jurisdiction over the claim and personal jurisdiction over the parties in order to entertain a declaratory judgment action. *See* United Purchasing Ass'n, LLC v. American Valve, Inc., 08-cv-515-Orl-31GJK (GAP), 2008 WL 2557559, at *2 (M.D.Fla. 2008) (declining to hear a declaratory judgment action for lack of personal jurisdiction). Plaintiffs seeks a declaration that the Sen 226 Patent is invalid because it was fraudulently obtained through Defendants' omission of Richards or GTL as an inventor or assignee and the absence of any reference to prior art

attributable to Richards. The only provision of Florida's long-arm statute that could apply to this claim is § 48.193(1)(b), Florida Statutes, which requires that the tortious act have been committed within the state. However, none of the allegedly fraudulent acts concerning the filing or grant of the Sen 226 Patent occurred in Florida. Accordingly, this Court lacks personal jurisdiction over Defendants with respect to this claim.

>9. Declaratory Judgment Action Concerning the Rights and Obligations of the Parties with Respect to the Richards 603 Patent

Plaintiffs seek a declaratory judgment that Sen and Minren Lin ("Lin") are not co-inventors of the Richards 603 Patent and a permanent injunction prohibiting Defendants from interfering with the licensing of the Richards 603 Patent. The precise factual basis for these claims are not entirely clear from the pleadings. However, the Second Amended Complaint states that "Defendants' written statements have asserted that at least one additional inventor employed by Penn State must be added as a coinventor of the Richards 603 Patent, for that patent to be valid." Second Am. Compl., ¶ 72. The Complaint further states that "[b]y means of false, deceptive, and defamatory statements and other illegal actions, Defendants have sought to make it impossible for Plaintiffs to license the Richards '603 Patent." Id., ¶ 73. The only portion of the long-arm statute that could be applicable to this claim under the present facts is § 48.193(1)(b), Florida Statutes, which requires that the tortious act have been committed within the state. However, none of the allegedly unlawful acts occurred in Florida. Accordingly, this Court lacks personal jurisdiction over Defendants with respect to this claim.

### B. General Jurisdiction

Plaintiffs have not asserted general jurisdiction as a basis of personal jurisdiction over

Defendants. With respect to general jurisdiction, "Florida courts have interpreted 'substantial and not isolated activity' to mean 'continuous and systematic general business contact.'" <u>Design-Build Concepts, Inc. v. Jenkins Brick Co.</u>, No. 06cv558 (MCR), 2008 WL 868150, at *2 (N.D.Fla. 2008). Plaintiffs have put forth no facts supporting general jurisdiction, nor have they asserted that general jurisdiction exists. Therefore, this Court finds that there are no facts in the record supporting an assertion of general jurisdiction under Florida's long-arm statute.

### III.  CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss Second Amended Complaint (dkt # 49) is GRANTED because this Court lacks personal jurisdiction over Defendants as to all counts. The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this _27_ day of November, 2008.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record